UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

-------------------------------------------------------- x

ROBERT BROWN and THE ESTATE OF   :
BOBBI KRISTINA BROWN      :
                :
    Plaintiffs,       :
                :   Case No.: 1:18-cv- 011078-CM
v.                :
                :
SHOWTIME NETWORKS, INC., BRITISH  :   ECF Case
BROADCASTING CORPORATION, PASSION :
PICTURES CORP., TRACEY BAKER-    :
SIMMONS, WANDA SHELLEY, B2     :
ENTERTAINMENT, LLC, and SIMMONS   :   Oral Argument Requested
SHELLEY ENTERTAINMENT, LLC     :
                :
    Defendants.      :
                :

-------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF SHOWTIME NETWORKS INC. AND BRITISH BROADCASTING CORPORATION TO DISMISS THE COMPLAINT AND MOTION OF BRITISH BROADCASTING CORPORATION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Samuel M. Bayard
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: samuelbayard@dwt.com


*Attorneys for Defendants Showtime Networks Inc. and British Broadcasting Corporation*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................... 2

A.    The Parties ........................................................................................... 2

B.    The Documentary................................................................................. 3

C.    The TV One Lawsuit ........................................................................... 4

D.    The Complaint in this Lawsuit............................................................. 4

ARGUMENT

I.    PLAINTIFFS CANNOT STATE A CLAIM UNDER FEDERAL RULE 12(b)(6).......... 5

          A.    Mr. Brown's Right-Of-Publicity Claims Should Be Dismissed................ 6

                1.    The First Amendment Bars Mr. Brown's Claims........................... 6

                2.    Mr. Brown's Claims Independently Fail Under California Civil Code § 3344(d) ........................................................ 8

          B.    The First Amendment Bars the Estate's Right-of-Publicity Claim under Georgia Law ........................................................ 10

          C.    Mr. Brown's Lanham Act Claim Must Be Dismissed............................. 12

          D.    Mr. Brown Cannot State a Claim for Tortious Interference with Contract........................................................ 15

II.    THE COURT LACKS PERSONAL JURISDICTION OVER BBC .............................. 17

          A.    There Is No General Jurisdiction Over BBC ............................................ 18

          B.    There Is No Specific Jurisdiction Over BBC............................................ 19

                1.    New York's Long-Arm Statute Does Not Support Specific Jurisdiction........................................................ 19

       a.    BBC Did Not "Transact Business" in New York ................................. 20

       b.    BBC Did Not Commit a Tortious Act in New York ............................ 21

                2.    Exercising Specific Personal Jurisdiction Over BBC Would Offend Due Process ........................................................ 21

4843-3936-8845v.6 0106763-000004

a.    BBC Does Not Have The Necessary "Minimum Contacts" with New York ....... 21

b.    Exercising Personal Jurisdiction Over BBC Is Not "Reasonable" ...................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987)................................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................5

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999).....................................................................21

*BNSF Ry. Co. v. Tyrrell*,
    137 S. Ct. 1549 (2017).............................................................................18

*Bogie v. Rosenberg*,
    705 F.3d 603 (7th Cir. 2013) ..................................................................11

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017).......................................................................17, 22

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016).....................................................................18

*Brown v. TV One et al.*,
    Case No. 1:17-cv-06824-AT (S.D.N.Y. Sept. 7, 2017)...........................4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................21

*Candelaria v. Spurlock*,
    No. 08 CIV. 1830 BMCRER, 2008 WL 2640471 (E.D.N.Y. July 3, 2008) ...........................11

*Cher v. Forum Int'l*,
    692 F.2d 634 (9th Cir. 1982) ....................................................................8

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*,
    886 F.2d 490 (2d Cir. 1989).....................................................................12

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387, 21 P.3d 797 (2001) ........................................................6

iii

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................................18

*Daly v. Viacom, Inc.*,
    238 F. Supp. 2d 1118 (N.D. Cal. 2002) .........................................................6, 8, 11

*de Havilland v. FX Networks, LLC*,
    21 Cal. App. 5th 845, 230 Cal. Rptr. 3d 625 (Cal. Ct. App. 2018) .................................6, 7, 8

*Deitrick v. Gypsy Guitar Corp.*,
    16 Civ. 616 (ER), 2016 WL 7494881 (S.D.N.Y. Dec. 28, 2016)...........................................20

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009)........................5

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536, 18 Cal. Rptr. 2d 790 (Cal. Ct. App. 1993) .................................7, 9, 10

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) .........................................................................................13

*Eastwood v. Superior Court*,
    149 Cal. App. 3d 409, 198 Cal. Rptr. 342 (Cal. Ct. App. 1983).........................................9

*Esch v. Universal Pictures Co.*,
    No. 6:09-cv-02258-JEO, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010)................................11

*Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*,
    947 F. Supp. 2d 922 (N.D. Ind. 2013), *aff'd on other grounds*, 763 F.3d 696
    (7th Cir. 2014).................................................................................................................15

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400, 40 Cal. Rptr. 2d 639 (Cal. Ct. App. 2001) .................................6, 9, 10

*Goodyear Dunlap Tire Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).....................................................................................................19, 21

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)..............................................................................................8

*Guglielmi v. Spelling-Goldberg Prods.*,
    25 Cal. 3d. 860, 160 Cal. Rptr. 352 (Cal. 1979) .........................................................6, 8

*Gutchess Lumber Co. v. Wieder*,
    No. 5:13-CV-1013 FJS/DEP, 2013 WL 5346857  (N.D.N.Y. Sept. 23, 2013) ........................5

*Hidden City Philadelphia v. ABC, Inc.*,
    No. CV 18-65, 2019 WL 1003637 (E.D. Pa. Mar. 1, 2019)..................................................14

iv

*Hit Bound Music, Ltd. v. BBC Films*,
No. 216CV7125CBMKSX, 2017 WL 5640543 (C.D. Cal. June 28, 2017) ......................18, 22

*Holowecki v. Fed. Express Corp.*,
440 F.3d 558 (2d Cir. 2006) ...................................................................................................3

*Huggins v. Povitch*,
No. 131164/94, 1996 WL 515498 (Sup. Ct. N.Y. Cty. Apr. 19, 1996) ...................................17

*Lamparello v. Falwell*,
420 F.3d 309 (4th Cir. 2005) ................................................................................................14

*Lancaster v. Colonial Motor Freight Line, Inc.*,
177 A.D.2d 152, 581 N.Y.S.2d 283 (1st Dep't 1992) ...........................................................19

*Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*,
868 F. Supp. 2d 172 (S.D.N.Y. 2012) ..............................................................12, 13, 14, 15

*Megna v. Biocamp Labs. Inc.*,
166 F. Supp. 3d 493 (S.D.N.Y. 2016) ...................................................................................20

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
74 F. Supp. 3d 1134 (N.D. Cal. 2014) ...................................................................................15

*Miller v. Mercuria Energy Trading, Inc.*,
291 F. Supp. 3d 509 (S.D.N.Y. 2018) ...................................................................................20

*Montana v. San Jose Mercury News*,
34 Cal. App. 4th 790 (1995) ..............................................................................................6, 9

*New Kids on the Block v. News America Publ'g*,
971 F.2d 302 (9th Cir. 1992) ........................................................................................8, 9, 10

*Page v. Something Weird Video*,
960 F. Supp. 1438 (C.D. Cal. 1996) .......................................................................................8

*Penachio v. Benedict*,
461 F. App'x 4 (2d Cir. 2012) ...............................................................................................17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
16 N.Y.3d 295, 921 N.Y.S.2d 171 (2011) .............................................................................19

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
946 F. Supp. 2d 957 (N.D. Cal. 2013) ...................................................................................16

*Prospect Funding Holdings, LLC v. Vinson*,
256 F. Supp. 3d 318 (S.D.N.Y. 2017) ...................................................................................16

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ............................................................................12, 13, 14, 15

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff d*, 387 F. App'x. 72 (2d Cir. 2010) ......................16

*Ruffin-Steinback v. dePasse*,
    82 F. Supp. 2d 723 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th Cir. 2001) ..........................11

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ............................................................................................6, 7

*Scottevest, Inc. v. AyeGear Glasgow Ltd.*,
    No. 12 Civ. 851(PKC), 2012 WL 1372166 (S.D.N.Y. Apr. 17, 2012) ...................................20

*Somerson v. World Wrestling Entm't, Inc.*,
    956 F. Supp. 2d 1360 (N.D. Ga. 2013) ................................................................................11

*Sullivan v. Barclays PLC*,
    No. 13-CV-2811 (PKC), 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ...................................18

*Theraplant, LLC v. Makarechi*,
    16-cv-0646(DLC), 2016 WL 7839186 (S.D.N.Y. Dec. 23, 2016) .........................................21

*Thoroughbred Legends, LLC v. The Walt Disney Co.*,
    No. 1:07-CV-1275-BBM, 2008 WL 616253 (N.D. Ga. Feb. 12, 2008).....................10, 11, 12

*Triano v. Gannett Satellite Info. Network, Inc.*,
    No. 09-CV-2497 KMK, 2010 WL 3932334 (S.D.N.Y. Sept. 29, 2010) ...................................3

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ..............................................................................................15

*Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*,
    996 F.2d 1366 (2d Cir. 1993)................................................................................................13

*Tyne v. Time Warner Entm't Co.*,
    901 So.2d 802 (Fla. 2005)....................................................................................................11

*Valencia v. Universal City Studios LLC*,
    No. 1:14-CV-00528-RWS, 2014 WL 7240526 (N.D. Ga. Dec. 18, 2014).............................11

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................................17, 22

*Whitehurst v. Showtime Networks, Inc.*,
    No. 1:08-CV-47, 2009 WL 3052663 (E.D. Texas Sept. 22, 2009) .........................................11

4843-3936-8845v.6 0106763-000004

**Statutes & Other Authorities**

Cal. Civ. Code § 3344..............................................................................................5, 8, 9, 10

N.Y. C.P.L.R. § 302 ....................................................................................19, 20, 21

Fed. R. Civ. P. 12....................................................................................................1, 5, 15

Defendants Showtime Networks Inc. ("Showtime") and British Broadcasting Corporation ("BBC") (collectively, the "Documentary Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and BBC's Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2).

## PRELIMINARY STATEMENT

At its heart, Plaintiffs' lawsuit challenges the Documentary Defendants' right to make *Whitney. "Can I Be Me"* (the "Documentary"), a documentary chronicling the life of the singer and actress – and all-around superstar – Whitney Houston.  Plaintiff Robert "Bobby" Brown claims that the Documentary violates his right of publicity under California law and violates the Lanham Act by using his name and image without his permission.  The Estate of Mr. Brown's daughter, Bobbi Kristina Brown (the "Estate") joins the lawsuit also claiming that Ms. Brown's depiction violates Georgia's right-of-publicity law.  Plaintiffs' claims, however, strike at the heart of the First Amendment and must be dismissed for the following reasons.

*First*, the First Amendment bars Mr. Brown's statutory and common law right-of-publicity claims because the Documentary is an expressive work on a matter of public interest entitled to full constitutional protection against right-of-publicity claims.  The California statutory public-affairs exemption, which provides even broader protection than the First Amendment, likewise precludes Mr. Brown's right-of-publicity claims.  As with Mr. Brown's claims, the First Amendment bars the Estate's sole claim for right of publicity because the Documentary is an expressive work on matters of public interest.

*Second*, the First Amendment similarly precludes Mr. Brown's Lanham Act claim. Under the *Rogers* test, the claim fails as a matter of law because the use of Mr. Brown's name

and image in a documentary about Ms. Houston's life is artistically relevant and not explicitly misleading.

*Third*, Mr. Brown's tag-on claim for tortious interference with contract fares no better. Based on his own allegations, the alleged breach (if any) took place before Showtime and BBC were even alerted to the existence of the contract in question, and Mr. Brown does not – and cannot – allege facts plausibly showing that the Documentary Defendants intentionally procured a breach of contract.

Finally, BBC should be dismissed from this lawsuit for the independent reason that the Court lacks personal jurisdiction over BBC.  BBC is organized under the laws of the United Kingdom, has its principal place of business in London, and has no offices or employees in New York.  Indeed, BBC's only connection to this lawsuit is that it broadcasted the Documentary in the U.K., not in the U.S.

## STATEMENT OF FACTS

**A.    The Parties**

According to the Complaint, Mr. Brown is a "legendary singer" and former member of the group "New Edition."  Compl. ¶ 12.  He is also the ex-husband of Whitney Houston.  *Id.* Ms. Houston and Mr. Brown had a daughter, Bobbi Kristina Brown, who passed away in 2015 in Georgia.  *Id.* ¶ 15.

Showtime operates a premium television network headquartered in New York.  *See* Compl. ¶ 5.  BBC is the main public service provider of broadcast television and radio news and other entertainment content in the U.K.  Declaration of Clive Illenden ("Illenden Decl.") ¶ 3. BBC was established by Royal Charter and Agreement, which forms its U.K. constitutional basis as presented to Parliament.  *Id.*  BBC's principal place of business is London.  *Id.*  BBC is not

4843-3936-8845v.6 0106763-000004

qualified to do business in New York, does not pay taxes in the state, and has no offices,

employees, or property in the State.  *Id.* ¶ 4.

**B.      The Documentary[1]**

The Documentary draws footage from several sources to comment on Whitney Houston's

extraordinary career and tragic death.  *See* Bayard Decl., Ex. A.  As part of her story, the

Documentary explores her relationship with those closest to her, including her relationship with

Mr. Brown and their daughter Bobbi Kristina Brown.  Showtime distributed the Documentary in

the United States.  Compl.  ¶ 17.  BBC broadcasted the Documentary in the U.K.  Illenden Decl.

¶ 5.

As the Documentary recounts, Ms. Houston met Mr. Brown at the 1989 Soul Train

Awards where Mr. Brown performed and won Best R&B/Urban Contemporary Album of the

Year, while she was booed for embracing pop instead of R&B.  During this same period, the

press and public questioned Ms. Houston about her sexuality because of her intimate relationship

with her friend Robyn Crawford.  With this backdrop, the Documentary provides commentary

and insights into Ms. Houston and Mr. Brown's tumultuous public relationship, documenting

their interactions and highlighting key points, such as touring together in 1999 and their divorce

in 2007.

---

[1] A true and correct copy of the Documentary is attached as Exhibit A to the Declaration of
Samuel M. Bayard ("Bayard Decl."). Although Plaintiffs failed to attach a copy of the
Documentary to the Complaint, the Court may consider it on a Rule 12(b)(6) motion because "it
forms the entire basis for Plaintiffs' claims." *Triano v. Gannett Satellite Info. Network, Inc.*, No.
09-CV-2497 KMK, 2010 WL 3932334, at *3 (S.D.N.Y. Sept. 29, 2010).  *See also Holowecki v.
Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) ("When a plaintiff chooses not to
attach to the complaint or incorporate by reference a document upon which it solely relies and
which is integral to the complaint, the court may nevertheless take the document into
consideration in deciding the defendant's motion to dismiss, without converting the proceeding
to one for summary judgment.") (internal quotation marks and alterations omitted).

The Documentary also explores Ms. Houston's relationship with her daughter Bobbi Kristina Brown.  The film shows, for example, how Ms. Brown was thrust into the public eye at a young age by performing with her mother.  In one clip, Ms. Houston reveals deep concern for the well-being of her daughter when she reprimands Mr. Brown for criticizing their daughter's weight, saying "Don't talk like that…She's a star's kid…I'm worried about her."  Bayard Decl., Ex. A 1:33:23-1:34:00.  The last moments of the Documentary cover Ms. Brown's highly publicized death from a drug overdose in 2015, commenting on the similarities to her mother's passing.

## C.      The TV One Lawsuit

In September 2017, Plaintiffs sued TV One, among other defendants, for violation of their right of publicity and the Lanham Act arising from the movie *Bobbi Kristina*, a biopic about the life of Bobbi Kristina Brown.  *Brown v. TV One et al.*, Case No. 1:17-cv-06824-AT (S.D.N.Y. Sept. 7, 2017).   Plaintiffs moved for a preliminary injunction, which the Court denied.  In denying the motion, the Court found that the lives of Mr. Brown and Bobbi Kristina Brown are matters of public interest and the right-of-publicity claims brought by them therefore had no likelihood of success.  *See* Transcript of Preliminary Injunction Hearing, at 12-13, 1:17-CV-0682-AT (Dkt. 57) (attached as Ex. B).  The Court also rejected Plaintiffs' Lanham Act claim, holding that "there is no dispute that the use of plaintiffs' marks has artistic relevance to the film" and there was no evidence suggesting that defendants had "explicitly misled" consumers. *See* Ex. B at 14-15.

## D.      The Complaint in this Lawsuit

On December 28, 2018, Plaintiffs filed this lawsuit against Showtime, BBC, Passion Pictures, Tracey Baker-Simmons, Wanda Shelley, B2 Entertainment LLC ("B2"), and Simmons Shelly Entertainment, LLC alleging seven claims: (1) a statutory right-of-publicity claim under

4

California Civil Code § 3344, brought by Mr. Brown against all Defendants; (2) a common law right-of-publicity claim under California law, brought by Mr. Brown against all Defendants; (3) a right-of-publicity claim under Georgia law, brought by the Estate against Showtime, BBC, and Passion Pictures; (4) a Lanham Act claim brought by Mr. Brown against all Defendants; (5) a breach-of-contract claim brought by Mr. Brown against B2; (6) a "permanent injunction" claim brought by Plaintiffs against Showtime, BBC, and Passion Pictures; and (7) a tortious interference with contractual relations claim brought by Mr. Brown against Showtime, BBC, and Passion Pictures, Shelley, Simmons, and Simmons Shelly Entertainment.

## ARGUMENT

## I.      PLAINTIFFS CANNOT STATE A CLAIM UNDER FEDERAL RULE 12(B)(6)

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible only if the plaintiff pleads "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 341 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009). As set forth below, the Complaint has failed to state a plausible claim for relief against the Documentary Defendants and, as a result, the Court should dismiss the claims against Showtime and BBC with prejudice.[2]

---

[2] Although Plaintiffs allege a separate cause of action for a permanent injunction (Compl. ¶¶ 67-71), permanent injunctions are a remedy, not an independent cause of action. *See Gutchess Lumber Co. v. Wieder*, No. 5:13-CV-1013 FJS/DEP, 2013 WL 5346857, at *3, n.1 (N.D.N.Y. Sept. 23, 2013).

A.      **Mr. Brown's Right-Of-Publicity Claims Should Be Dismissed**

1.      **The First Amendment Bars Mr. Brown's Claims**

Courts applying California law repeatedly have held that the First Amendment defeats right-of-publicity claims arising from the use of real-life individuals' names, likenesses, and life stories in documentaries, motion pictures, and similar expressive works.  *See, e.g.*, *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (First Amendment barred right-of-publicity claim arising from the movie *The Hurt Locker*); *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d. 860, 871-72, 160 Cal. Rptr. 352, 359-60 (Cal. 1979) (docudrama about actor's life was constitutionally protected) (Bird, C.J., concurring)[3]; *de Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 230 Cal. Rptr. 3d 625 (Cal. Ct. App. 2018) (depiction of actress in television series was constitutionally protected); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (dismissing right-of-publicity claim arising from reality television program on First Amendment grounds); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411, 416, 40 Cal. Rptr. 2d 639, 640 (Cal. Ct. App. 2001) (First Amendment barred claim based on use of information about former MLB players); *Montana v. San Jose Mercury News*, 34 Cal. App. 4th 790, 793 (1995) (resale of photographs depicting pro-football player on poster was protected).

In *Sarver*,  for example, the Ninth Circuit held that the First Amendment barred a right-of-publicity claim asserted by the subject of *The Hurt Locker*, a movie docudrama about an American soldier in Iraq, holding that "'The Hurt Locker' is speech that is fully protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life – including the stories of real individuals, ordinary or extraordinary – and transform them into

---

[3]  Although written as a concurrence, the California Supreme Court subsequently noted that Chief Justice Bird's opinion "commanded the support of the majority of the court" because her opinion was joined or endorsed by three other Justices.  *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 396 n.7, 21 P.3d 797, 802 n.7 (2001).

6

art, be it articles, books, movies, or plays."  813 F.3d at 905.  Because the plaintiff had no

"compelling state interest in preventing the defendants' speech," the court concluded that

"applying California's right of publicity in this case would violate the First Amendment."  *Id.* at

906.

Recently, in *de Havilland*, the California Court of Appeal made clear that the First

Amendment provides virtually an absolute bar to right-of-publicity claims arising from

expressive works.  As the appeals court observed,

> Books, films, plays, and television shows often portray real people. Some are
> famous and some are just ordinary folks.  Whether a person portrayed in one of
> these expressive works is a world-renowned film star – 'a living legend' – or a
> person no one knows, she or he does not own history.  Nor does she or he have the
> legal right to control, dictate, approve, disapprove, or veto the creator's portrayal
> of actual people.

21 Cal. App. 5th at 850, 230 Cal. Rptr. 3d at 630. (emphasis added).  The court held that the

plaintiff had no viable right-of-publicity claim because the television program at issue was an

expressive work protected by the First Amendment.

Like the film in *Sarver*, and the TV show in *de Havilland*, the Documentary is an

expressive work entitled to the highest degree of First Amendment protection.  *See Dora v.*

*Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542-44, 18 Cal. Rptr. 2d 790, 792-93 (Cal. Ct. App.

1993) (First Amendment barred right-of-publicity claim against documentary film about

surfing).  Therefore, as a matter of law, the creators of the Documentary could portray Mr.

Brown "without acquiring his rights."  *De Havilland*, 21 Cal. App. 5th at 861, 230 Cal. Rptr. 3d

at 639.

The same constitutional protection extends to the alleged use of Mr. Brown's name,

likeness, and biographical information in advertising or promotions for the Documentary.

For example, in *Guglielmi*, the California Supreme Court explained that the use of the name and likeness of the actor Rudolph Valentino to promote a film "was merely an adjunct to the exhibition of the film. … It would be illogical to allow respondents to exhibit the film but effectively preclude any advance discussion or promotion of their lawful enterprise." *Guglielmi*, 25 Cal. 3d. at 872-73, 160 Cal. Rptr. 2d at 360.  The court in *de Havilland* similarly held that the "use of a person's name and likeness to advertise a novel, play, or motion picture concerning that individual is not actionable as an infringement of the right of publicity."  21 Cal. App. 5th at 862, 230 Cal. Rptr. 3d at 639. [4]  Thus, the marketing of the Documentary is similarly protected under the First Amendment and California law, and Mr. Brown cannot succeed on this claim.

### 2.    Mr. Brown's Claims Independently Fail Under California Civil Code § 3344(d)

When the California Legislature enacted Section 3344, it expressly exempted from liability any use of an individual's likeness in an expressive work that relates to "public affairs." Cal. Civ. Code § 3344(d).  That exemption affords such works *even broader protection* against statutory misappropriation claims than the First Amendment does; in fact, it "is designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest."  *New Kids on the Block v. News America Publ'g*, 971 F.2d 302, 310 n.10 (9th Cir. 1992).  Both the Ninth

---

[4] Federal courts consistently have recognized the same principle. *E.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1049-51 (2d Cir. 1995) (holding that New York law and the First Amendment protected use of plaintiff's photograph in advertisement for book discussing his theories); *Cher v. Forum Int'l*, 692 F.2d 634, 639 (9th Cir. 1982) (First Amendment protection extends to "advertising which is merely an adjunct of the protected publication and promotes only the protected publication," so long as it does not falsely claim endorsement); *Daly*, 238 F. Supp. 2d at 1123 (because TV show was "an expressive work protected by the First Amendment, plaintiff cannot state a misappropriation claim based on the use of her likeness in the program or the advertisements for the program"); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) (image of actress in catalog advertising her films was "incidental to the protected publication of the videos").

8

Circuit and the California Supreme Court have observed that Section 3344(d) provides a complete defense to statutory *and* common-law right-of-publicity claims. *Id.* at 309-310; *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421, 198 Cal. Rptr. 342, 349 (Cal. Ct. App. 1983).

Consistent with the legislative purpose, courts have interpreted the "public affairs" exemption expansively, and have recognized that it applies to much more than just traditional news reports. In *Dora v. Frontline Video*, for example, the court rejected the plaintiff's argument that the defendants' documentary film about early surf culture did not relate to "public affairs" within the meaning of Section 3344(d). 15 Cal. App. 4th at 545-546, 18 Cal. Rptr. 2d at 794. Noting that "Civil Code section 3344, subdivision (d) distinguishes between news and public affairs," the court held that "the Legislature intended that the category of public affairs would include things that would not necessarily be considered news." *Id.* at 545, 18 Cal. Rptr. 2d at 794. Because "the public is interested in and constitutionally entitled to know about things, people, and events that affect it," the court concluded that "we cannot limit the term 'public affairs' to topics that might be covered on public television or public radio." *Id.* at 546, 18 Cal. Rptr. 2d at 794. Turning to the defendants' film, the court observed that "surfing … has created a lifestyle that influences speech, behavior, dress, and entertainment," and "has also had a significant influence on the popular culture, and in that way touches many people." *Id.*, 18 Cal. Rptr. 2d at 794-95 For those reasons, the court held that early surf culture satisfied the public-affairs test, and that the film was exempt from liability under Section 3344(d).

Later, in *Montana*, the court found that the defendant's poster about professional football related to "public affairs" within the meaning of Section 3344. *Montana*, 34 Cal. App. 4th at 795-96, 40 Cal. Rptr. 2d at 642. Citing the *Dora* court's decision that surfing was a matter of

9

public affairs under Section 3344(d), the court declared that "the same public interest considerations … apply with equal force to professional football," and that the exemption defeated Joe Montana's right-of-publicity claim.  *Id.* at 796, 40 Cal. Rptr. 2d at 642  The Ninth Circuit endorsed this broad definition of "public affairs" in *New Kids*, holding that Section 3344(d) defeated right-of-publicity claims by members of a then-popular boy band against publications that used their names and images in connection with 900-number telephone polls asking fans to vote for their favorite band member.  971 F.2d at 310.

Like the works at issue in *Dora*, *Montana*, and *New Kids*, the Documentary easily falls within the public-affairs exemption.  These decisions recognize that the exemption shields works – whether informative, entertaining, or both – that relate to "popular culture" and to "real-life occurrences."  *Dora*, 15 Cal. App. 4th at 545-546, 18 Cal. Rptr. 2d at 794-95.  As set forth above, the Documentary relates to issues of public interest – the life of Whitney Houston, including her marriage to the "legendary" Mr. Brown – and thus it relates to a matter of "public affairs" within the meaning of Section 3344(d).  Mr. Brown's right-of-publicity claims fail as a matter of law for this additional reason.

## B.    The First Amendment Bars the Estate's Right-of-Publicity Claim under Georgia Law

The Estate's right-of-publicity claim under Georgia law similarly fails because "[t]he First Amendment protection of freedom of expression restricts such a claim."  *Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07-CV-1275-BBM, 2008 WL 616253, at *11 (N.D. Ga. Feb. 12, 2008) (citations omitted).

*Thoroughbred Legends* is instructive.  There, the court, applying Georgia law, held that the First Amendment protected defendants from the plaintiffs' claim that they unlawfully appropriated plaintiffs' name and likeness in defendants' movie entitled "Ruffian," which was

based on historical events concerning a famous horse.  Relying on the *Restatement*, the court

noted that "the right of publicity is not infringed by the dissemination of an unauthorized print or

broadcast biography. *Use of another's identity in a novel, play, or motion picture is also not*

*ordinarily an infringement.*"  *Id.* at \*12 (quoting *Restatement (Third) of Unfair Competition* §

47 cmt c; emphasis in original).  Similarly, in *Somerson v. World Wrestling Entm't, Inc.*, 956 F.

Supp. 2d 1360, 1366, 1368 (N.D. Ga. 2013), the court recognized that the dissemination of the

name and persona of a retired and "highly successful professional wrestler and entertainer[]" on

a website was "a matter of public interest and protected by the First Amendment."[5]

Here, there is no question that the Documentary is an expressive work protected by the

First Amendment.  *See Valencia v. Universal City Studios LLC*, No. 1:14-CV-00528-RWS, 2014

WL 7240526, at \*8 (N.D. Ga. Dec. 18, 2014) (holding that feature films "are works protected by

the First Amendment"); *Daly*, 238 F. Supp. 2d at 1123 (noting that reality show *Bands on the*

*Run* was "an expressive work protected by the First Amendment").  Moreover, the Documentary

addresses matters of public interest, exploring Houston's life and her tumultuous relationship

---

[5] Like California law, Georgia law is consistent with a nationwide consensus recognizing that the First Amendment protects expressive works like documentary films and biopics from right-of-publicity claims.  *See, e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 615 (7th Cir. 2013) (dismissing Illinois right-of-publicity claim arising from unauthorized use of plaintiff's likeness in documentary about Joan Rivers); *Candelaria v. Spurlock*, No. 08 CIV. 1830 BMCRER, 2008 WL 2640471, at \*2 (E.D.N.Y. July 3, 2008) (holding that use of plaintiff's image in documentary film "Super Size Me" was not actionable under New York's Section 51 because it related to "newsworthy events or matters of public interest"); *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 730-31 (E.D. Mich. 2000) (holding, in light of First Amendment concerns, that Michigan's misappropriation law did not apply to a docudrama miniseries about the Temptations), *aff'd*, 267 F.3d 457, 461-62 (6th Cir. 2001); *Whitehurst v. Showtime Networks, Inc.*, No. 1:08-CV-47, 2009 WL 3052663, at\*6 (E.D. Texas Sept. 22, 2009) (dismissing misappropriation claim over use of Texas murder victim's likeness in film about his death and DVD cover for film); *Esch v. Universal Pictures Co.*, No. 6:09-cv-02258-JEO, 2010 WL 5600989, at \*3–5 (N.D. Ala. Nov. 2, 2010) (dismissing appropriation claim against fictional animated movie *Despicable Me* because "movie is clearly an expressive work protected under the First Amendment"); *Tyne v. Time Warner Entm't Co.*, 901 So.2d 802, 808-09 (Fla. 2005) (holding that movie *The Perfect Storm* was exempt from Florida appropriation claim).

with Mr. Brown.  As such, the Documentary cannot give rise to a right-of-publicity claim under Georgia law.

In contrast, the cases cited by Plaintiffs in the Complaint relate to *commercial* products and uses, as opposed to works of artistic expression like the Documentary.  *See* Compl. ¶¶ 25-27 (citing *Alonso v. Parfet*, 253 Ga. 749, 325 S.E.2d 152, 153 (Ga. 1985) (right-of-publicity claim based on the use of his name in a grant application, not an expressive work); *Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prod., Inc.*, 250 Ga. 135, 135, 296 S.E.2d 697, 698 (Ga. 1982) (selling Dr. Martin Luther King Jr. merchandise)).

Moreover, under Georgia law, just like under California law, the marketing of the Documentary does not give rise to a right-of-publicity claim.  As the court in *Thoroughbred Legends* explained, "the use of plaintiffs' likeness in advertising the film is protected because the film itself is protected."  2008 WL 616253, at *12 (citation omitted).

### C.      Mr. Brown's Lanham Act Claim Must be Dismissed

The First Amendment also bars Mr. Brown's claim that the Documentary Defendants violated the Lanham Act.  The Second Circuit has recognized that "[b]ecause overextension of Lanham Act restrictions . . . might intrude on First Amendment values, we must construe the Act narrowly to avoid such a conflict."  *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).  Since *Rogers*, a case addressing the use of Ginger Rogers' name in a film title, courts within the Second Circuit have recognized that the "Lanham Act is inapplicable to 'artistic works' as long as the defendant's use of the mark is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source of the work."  *See Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (citing *Rogers*, 875 F.2d at 999, and *Twin Peaks Prods, Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)); *see also Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp.*, 886 F.2d 490, 495 (2d Cir. 1989) ("the

*Rogers* balancing approach is generally applicable to Lanham Act claims against works of artistic expression").  These requirements are easily met here.

*First*, the use of Mr. Brown's name and likeness is artistically relevant.  "The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work *whatsoever*.'" *Louis Vuitton*, 868 F. Supp. 2d at 178 (quoting *Rogers*, 875 F.2d at 999) (emphasis in original); *see also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[T]he level of relevance merely must be above zero.").  Here, the use of Mr. Brown's name is artistically relevant to the Documentary because it chronicles the story of Whitney Houston and those around her, including her ex-husband.

*Second*, the Documentary Defendants did not "explicitly mislead" viewers as to the source of the Documentary.  The relevant question here is "whether the defendant's use of the mark is misleading in the sense that it induces members of the public to believe the work was prepared or otherwise authorized by the plaintiff." *Louis Vuitton*, 868 F. Supp. 2d at 179; *see also Twin Peaks*, 996 F.2d at 1379; *E.S.S.,* 547 F.3d at 1100.  Although this determination is based on the same considerations as the ordinary likelihood-of-confusion analysis, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in Rogers." *Twin Peaks*, 996 F.2d at 1379; *see also Louis Vuitton*, 868 F. Supp. 2d at 181, 184 n. 19 ("Even if the court assumes, arguendo, that Louis Vuitton has stated a cognizable claim of confusion, its claim would fail anyway" under the First Amendment,

13

because "Rogers teaches that mark owners must accept 'some' confusion when outweighed by free speech interests.").[6]

In the Complaint, Mr. Brown alleges that the "credits in the film suggest that RB's and his company (Brownhouse) consented and authorized the use of his image and voice in the film." Compl. ¶ 56; Ex. B.  But the credits do no such thing.  They simply identify the joint venture – "B2 Brownhouse Entertainment in Association with Simmons Shelly Entertainment LLC" – as the source of archival footage used in the Documentary, along with dozens of other sources of licensed archival footage.[7]  Even if true, the allegation that the Documentary misidentifies the source of archival footage would not strip it of First Amendment protection under prong two of the *Rogers* test.  "Rogers and the cases adopting its holding have consistently framed the applicable standard in terms of confusion as to *the defendant's artistic work*."  *Louis Vuitton*, 868 F. Supp. 2d at 179 (emphasis added).  *See also id.* at 181 ("Louis Vuitton does not allege that Warner Bros. used the Diophy bag in order to mislead consumers into believing that *Louis Vuitton produced or endorsed the Film*. Therefore, the complaint fails to even allege the type of confusion that could potentially overcome the Rogers protection") (emphasis added).  Nothing in the Documentary or the credits explicitly indicates or overtly claims that the Documentary itself was created or authorized by Mr. Brown or his company.  *See Hidden City Philadelphia v. ABC, Inc.*, No. CV 18-65, 2019 WL 1003637, at *5 (E.D. Pa. Mar. 1, 2019) (granting Rule 12(b)(6)

---

[6] Mr. Brown cannot plausibly show a likelihood of confusion, even absent the First Amendment considerations here.  *Louis Vuitton,* 868 F. Supp. 2d at184 n. 19 (viewers "are sophisticated enough to know that the mere presence of a [trademark] in a film, especially one that is briefly and intermittently shown, does not indicate that the brand sponsored the movie").  Moreover, the Documentary at times criticizes Mr. Brown, which negates any possible inference of consumer confusion.  *See Lamparello v. Falwell*, 420 F.3d 309, 315 (4th Cir. 2005) ("No one would believe that Reverend Falwell sponsored a site criticizing himself, his positions, and his interpretations of the Bible.").

[7] Ex. A, at 1:43:48-1:44:21.

motion and noting that prong two of the *Rogers* test requires an "'explicit indication,' 'overt claim,' or 'explicit misstatement'").

Finally, First Amendment protection under *Rogers* applies to advertising and promotion related to an expressive work. *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196–97 (9th Cir. 2017) ("Although it is true that these promotional efforts technically fall outside the title or body of an expressive work, it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold."); *Louis Vuitton*, 868 F. Supp. 2d at 175 (dismissing Lanham Act claim on Rule 12(b)(6) despite allegations that the plaintiff's harm was "exacerbated by the prominent use of the aforementioned scenes and LVM Marks in commercials and advertisement for the [F]ilm."); *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1143 (N.D. Cal. 2014) (use of mark in promotional trailer for a game was protected under *Rogers* test and did not "diminish its artistic relevance within the game"); *Fortres Grand Corp. v. Warner Bros. Entm't, Inc.*, 947 F. Supp. 2d 922, 933-934 (N.D. Ind. 2013) (websites promoting the movie *The Dark Knight* protected under the *Rogers* test because "it is hard to see that they really propose any commercial transaction, other than obliquely convincing consumers to buy a ticket to the film.  Instead, they are creative, fictional extensions of the film . . . and are thus entitled to First Amendment protection"), *aff'd on other grounds*, , 763 F.3d 696, 700 (7th Cir. 2014).

Therefore, Mr. Brown's Lanham Act claim should be dismissed in its entirety.

### D.     Mr. Brown Cannot State a Claim for Tortious Interference with Contract

Under New York law, tortious interference with contract requires: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; (4) actual breach of the contract, and (5)

damages.[8]  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009), *aff d*, 387 F. App'x. 72 (2d Cir. 2010) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006)).

Here, Mr. Brown's tortious interference claim must be dismissed because he has not alleged – and indeed cannot allege – any intentional conduct by the Documentary Defendants to procure a breach by B2.  For this element, "it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that 'the defendant's *objective* was to procure such a breach."  *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327–28 (S.D.N.Y. 2017) (citations omitted; emphasis in original).  At most, Mr. Brown alleges that he notified the Documentary Defendants of his contract with B2 in 2017, *after* the Documentary was complete, but they "continued to allow the film . . . to be exhibited, distributed, and broadcasted."  Compl. ¶ 79.  At that point, any alleged breach by B2 – *i.e.* by licensing the footage at issue – would have already occurred, and simply continuing to distribute the Documentary could not plausibly result in a new breach by B2.  Given that the alleged breach took place (if at all) *before* they were notified of the contract, the Documentary Defendants could not plausibly have *intended* to procure a breach by B2.

---

[8] To state a claim for tortious interference of contract under California law, a plaintiff must make a similar showing. *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 980 (N.D. Cal. 2013)(a cause of action for interference with prospective business advantage requires: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.") Thus, regardless of the law applied, Mr. Brown's tortious interference claim should be dismissed.

Moreover, the only plausible intent for the Documentary Defendants to "continue to allow the film . . . to be exhibited, distributed, and broadcasted" was to further their First Amendment rights to distribute a documentary on a matter of public interest, *not* to intentionally procure a breach of contract or harm Mr. Brown.  *See Huggins v. Povitch*, No. 131164/94, 1996 WL 515498, at *9 (Sup. Ct. N.Y. Cty. Apr. 19, 1996) (dismissing tortious interference with contract claim arising from a television show because "the broadcaster's first amendment right to broadcast an issue of public importance, its lack of any motive to harm the plaintiff, and the obvious societal interest in encouraging freedom of the press, negate essential elements of the tort").  Therefore, Mr. Brown's tortious interference claim should be dismissed.

## II.   CLAIMS AGAINST BBC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

"On a Rule 12(b)(2) motion, plaintiff carries the burden of demonstrating that jurisdiction exists."  *Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012).  The United States Supreme Court has recognized two types of personal jurisdiction.  General jurisdiction allows a court to hear "*any* claim against [a] defendant, even if all the incidents underlying the claim occurred in a different state."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original).  Conversely, specific jurisdiction arises out of a "defendant's contacts with the *forum*."  *Id.*  The Court must conduct the jurisdictional inquiry separately as to each defendant, since "the [constitutional] requirements . . . must be met as to each defendant over whom a state court exercises jurisdiction."  *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980)) (holding that the court erred "by considering the defending parties together and aggregating their forum contacts in determining whether it had jurisdiction").  Mr. Brown has not met his burden to show that this Court can exercise either general or specific jurisdiction over BBC.

17

A.      There Is No General Jurisdiction Over BBC

Under recent United States Supreme Court jurisprudence, general jurisdiction exists only in limited circumstances.  For a corporation, general jurisdiction is proper in either the corporation's state of incorporation or principal place of business.  *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014).  Only in an "exceptional case" where a corporation is "essentially at home" in another forum, can general jurisdiction be exerted anywhere else.  *Id.* at 138–39 & n.19.  *See also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (holding that Montana courts could not exercise general jurisdiction over BNSF Railway even though the railway operated 2,000 miles of track and employed 2,000 individuals in the state).  "A corporation that operates in many places can scarcely be deemed at home in all of them*." Id.* (citing *Daimler*, 571 U.S. at 139 n.20).

Mr. Brown cannot meet this extremely strict standard.  The BBC is not incorporated or registered to do business in New York, it does not pay taxes in the state, and it has no offices, employees, or property in the state.  Illenden Decl. ¶ 4.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) ("When a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'").  Mr. Brown in a conclusory manner alleges that the BBC has two New York business addresses.  Compl. ¶ 6.  However, one of those addresses is a business location for a BBC subsidiary, BBC Studios, and the other address was the business address for a different subsidiary, which no longer operates from that office and has merged to become part of BBC Studios.  Illenden Decl. ¶¶ 7-8.  "The mere existence of an in-state branch or subsidiary is insufficient to confer general personal jurisdiction over a foreign parent." *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *41 (S.D.N.Y. Feb. 21, 2017).  Accordingly, there is no general jurisdiction over BBC.  *See Hit*

18

*Bound Music, Ltd. v. BBC Films*, No. 216CV7125CBMKSX, 2017 WL 5640543, at *2 (C.D. Cal. June 28, 2017) (finding that no general jurisdiction existed over BBC even though a subsidiary had an office in the state).

**B.      There Is No Specific Jurisdiction Over BBC**

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State." *Goodyear Dunlap Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In order to determine whether specific jurisdiction exists, courts in the Second Circuit conduct a two-part inquiry.  *First*, the court must determine whether specific jurisdiction is proper under New York's long-arm statute, C.P.L.R. 302.  *Second*, even if jurisdiction is proper under the long-arm statute, the court must examine whether the exercise of jurisdiction comports with constitutional due process.

**1.      New York's Long-Arm Statute Does Not Support Specific Jurisdiction**

New York's long-arm statute provides multiple ways for a court to exercise specific jurisdiction over a defendant.  Only two are arguably relevant to this case.[9]  Under C.P.L.R. 302(a)(1), a court can exercise specific jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  Under

---

[9] Because neither Plaintiff resides in New York, they cannot argue that specific personal jurisdiction is proper under C.P.L.R. 302(a)(3), which provides for personal jurisdiction if a tort causes injury to a person or property within the state.  *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 921 N.Y.S.2d 171 (2011) (holding that the situs of injury for copyright cases is the residence or principal place of business of the copyright owner).  Further, under C.P.L.R. 302(a)(4), which provides for jurisdiction over someone who "owns, uses or possesses any real property situated within the state," there must be a "relationship between the property and the cause of action sued upon."  *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159, 581 N.Y.S.2d 283, 288 (1st Dep't 1992).  Here, Plaintiffs' claims do not arise from any real property located in New York.

C.P.L.R. 302(a)(2), a court can exercise specific jurisdiction over a defendant who "commits a tortious act" within the state.  Neither is applicable here.

### a.        BBC Did Not "Transact Business" in New York

Plaintiffs fail to allege that BBC has "conducted business" in New York.  Nor can they. A defendant must transact business in a way that constitutes "purposeful activity."  *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 522 (S.D.N.Y. 2018).  Further, the cause of action must "arise from" the business transaction, meaning there must be an "articulable nexus" or "substantial relationship" between the transaction and claim asserted.  *Id.*  When assessing whether a party transacted business, a court must consider "the totality of the circumstances surrounding the defendants' activities in New York in connection with the matter giving rise to the lawsuit" to determine if there is a direct relation between the cause of action and in-state conduct.  *Deitrick v. Gypsy Guitar Corp.*, 16 Civ. 616 (ER), 2016 WL 7494881, at *5 (S.D.N.Y. Dec. 28, 2016) (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)).

Here, BBC did not engage in any "purposeful activity" directed at New York.  BBC obtained rights to broadcast the Documentary in the United Kingdom only, not in New York or anywhere else in the United States.  The mere fact that Documentary was shown and distributed by a third party in New York is not enough to establish that BBC's conduct was expressly aimed at New York, as required to establish specific jurisdiction. *See Megna v. Biocamp Labs. Inc.*, 166 F. Supp. 3d 493, 498 (S.D.N.Y. 2016) (finding no specific jurisdiction when plaintiff "fails to distinguish in the Complaint between [defendant's] commerce in New York and commerce in the United States and the world generally"); *Scottevest, Inc. v. AyeGear Glasgow Ltd.*, No. 12 Civ. 851(PKC), 2012 WL 1372166, at *4 (S.D.N.Y. Apr. 17, 2012) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011)) (same).

20

### b.      BBC Did Not Commit a Tortious Act in New York

Generally, "a defendant's physical presence in New York is a prerequisite for jurisdiction under § 302(a)(2)." *Theraplant, LLC v. Makarechi*, 16-cv-0646(DLC), 2016 WL 7839186, at *3 (S.D.N.Y. Dec. 23, 2016) (citation omitted).  "At minimum, to qualify for jurisdiction under this subsection, 'a defendant's act or omission [must have] occur[red] within the State.'" *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789–90 (2d Cir. 1999) (citation omitted).  Here, BBC is not located in New York, and BBC committed no acts or omissions within the State related to the Documentary – the BBC broadcasted the Documentary only in the U.K.  Therefore, there are no facts that confer personal jurisdiction in New York under C.P.L.R. 302(a)(2).

### 2.      Exercising Specific Personal Jurisdiction Over BBC Offends Due Process

Even if the New York long-arm statute provided an appropriate jurisdictional basis (which it does not), constitutional due process precludes personal jurisdiction here.  For a court to exercise specific personal jurisdiction, the Constitution requires that a defendant have "minimum contacts" with the forum state, and that the exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923.

### a.      BBC Does Not Have The Necessary "Minimum Contacts" with New York

Under the "minimum contacts" prong of the due process analysis, a defendant must have "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).  The connection with New York must be such that the defendant "should reasonably anticipate being haled into court there." *Id.*  The United States Supreme Court has recently underscored that the "relationship [with the forum state] must arise out of contacts that

the defendant *himself* creates."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis in original).  Further, there must be a sufficient "connection between the forum and the specific claims at issue."  *Bristol-Myers Squibb*, 137 S. Ct. at 1781.  "[A] defendant's general connections with the forum are not enough."  *Id.*

Because all of the BBC's alleged conduct took place outside the United States and was aimed at a non-US audience, Plaintiffs cannot show that BBC created purposeful contacts with New York that have a meaningful nexus with this lawsuit.  In addition, the BBC had no reason to believe it would be sued in New York (or any other U.S. state) based on the Documentary's international distribution.  *See Hit Bound Music*, 2017 WL 5640543, at *3 (dismissing BBC for lack of jurisdiction in part because "[t]he mere fact that *My Old Lady* was shown and distributed by a third party in California is not enough to establish that BBC's conduct was expressly aimed at California.")

### b.     Exercising Personal Jurisdiction Over BBC Is Not "Reasonable"

The assertion of specific personal jurisdiction over BBC would also "offend traditional notions of fair play and substantial justice."  When analyzing this prong, courts consider five factors:

> [1] the burden on the defendant, [2] the interests of the forum State, . . . [3] the plaintiff's interest in obtaining relief[,] . . . [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14 (1987).

Here, a balancing of the relevant factors favors dismissal.  First, it would be burdensome for BBC to defend itself in New York.  The BBC employees who negotiated the license of the BBC's broadcast rights in the Documentary and who were otherwise involved in the broadcast of

the Documentary live and work in the U.K.  Illeden Decl. ¶ 6.  It would be inconvenient and expensive for BBC to transport these witnesses to New York to assist in BBC's defense. Second, Plaintiffs are not residents and have no real connection to New York.  They therefore have only the most attenuated interest in having a New York court adjudicate this dispute.  Third, neither New York, nor the interstate judicial system, nor the several States have a significant interest in regulating BBC's alleged conduct, all of which took place (if at all) outside the United States.

## CONCLUSION

For the foregoing reasons, the Documentary Defendants respectfully submit that the Court should dismiss the Complaint against them with prejudice for failure to state a claim.  In the alternative, BBC respectfully submits that the Court should dismiss the Complaint against it for lack of personal jurisdiction.

Dated: New York, New York
       April 1, 2019

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Samuel M. Bayard
    Samuel M. Bayard

1251 Avenue of the Americas, 21st Floor
New York, New York  10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: samuelbayard@dwt.com

*Attorneys for Defendants Showtime*
*Networks Inc. and British Broadcasting*
*Corporation*